## In re FLEIG MERCANTILE CO.

### HIRSHFELD v. FLEIG MERCANTILE CO.

#### (Circuit Court of Appeals, Seventh Circuit. October 3, 1916.)

#### No. 2318.

1. TRUSTS &sime;63¾—CREATION—ASSUMPTION OF DEBTS—NOVATION.

A bankrupt merchant's offer of a composition, to be paid partly in cash and partly in notes, having been accepted, and the bankrupt being unable to make the cash payment, his property was transferred to a corporation formed to carry on the business, which assumed payment of the composition notes, as well as advances made by the principal creditor to make cash payments to those creditors who would not waive them. *Held*, that as the transfer to the corporation was absolute, the creditors reserving no lien, there was no trust or trust relation which could be asserted by the creditors, whereby they could reach the property conveyed.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 91, 92, 98, 99, 100; Dec. Dig. &sime;63¾.]

2. BANKRUPTCY &sime;164—"PREFERENCE"—WHAT CONSTITUTES.

In such case, where there was no agreement by the other creditors that the principal creditor, who made advances to assist the corporation, should have priority over them, it appearing that all the creditors deemed a substantial equity would remain for the bankrupt after payment of the composition notes, a payment to the principal creditor on account of his advances, the corporation having become bankrupt, constitutes a "preference," where in derogation of the rights of other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. &sime;164.

For other definitions, see Words and Phrases, First and Second Series, Preference.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the Fleig Mercantile Company, bankrupt. From an order dismissing an involuntary petition in bankruptcy, Jacob B. Hirshfeld, doing business as J. B. Hirshfeld & Co., and others, appeal. Reversed and remanded, with directions.

Simon La Grou, of Chicago, Ill., for appellants.
Herman Frank, of Chicago, Ill., for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. This is an appeal from an order of District Court dismissing an involuntary petition in bankruptcy.

Fleigeltaub, a merchant, was in bankruptcy, owing about $50,000. A composition was suggested under which the creditors were to receive 25 per cent. of their claims, 10 per cent. in cash and 15 per

cent. in notes. A creditors' committee and various attorneys represented the creditors. Appellant Graff was attorney for the bankrupt. The bankrupt appears to have had no money to make the cash payment, and most of the creditors waived present payment of the 10 per cent., agreeing to accept additional notes therefor. The ten per cent. of the claims not thus waived and the expense of the bankruptcy aggregated about $4,000. This was advanced by one Adelman, who was the largest creditor. As the creditors, however, were unwilling to turn back the property to Fleigeltaub and to accept his notes, a plan was formulated whereby the property of the bankrupt would pass to a corporation, which was to be formed for the purpose of taking title to the property, carrying on the business, assuming and paying Fleigeltaub's obligations, including the composition notes and Adelman's advances, and thereafter turning over the business to Fleigeltaub. Details of the plan were submitted to the District Court, as well as to the creditors' committee and the attorneys for at least some of the creditors. The notes with the cash for carrying out the composition, were deposited with the court. A transfer of the property was made by the bankrupt to one Tannenbaum, a clerk in the office of one of the lawyers, and the composition was accordingly approved.

Pursuant to the agreed plan, a corporation known as Fleig Mercantile Company, was formed under the laws of Illinois, with capital stock of $12,000; the stockholders being Adelman, 61 shares, Goldstein, another large creditor, 58 shares, and Fleigeltaub, 1 share—totaling 120 shares, of $100 each. Tannenbaum, on receiving conveyance of the property, entered into an agreement with Fleigeltaub that he (Tannenbaum) convey the property to the corporation to be organized, subject to the assumption of Fleigeltaub's debts; that the stockholders transfer their stockholdings therein to the corporation, when the corporation or Fleigeltaub should have paid all of the advances, notes, and disbursements in connection with Fleigeltaub's composition; that in the meantime the corporation employ Fleigeltaub as manager of the business at $40 a week; and that, in the event the composition were not approved by the District Court, Tannenbaum reconvey the property.

Tannenbaum conveyed to the corporation by bill of sale, stating therein that it was made subject to certain claims and obligations assumed by the corporation in connection with the bankruptcy, and reciting that the company "by accepting the bill of sale assumes the payment of such indebtedness and obligations." The corporate records of the company show that, in consideration of the sale to the company of the property, the company assumed certain indebtedness shown by a certain "schedule of obligations assumed"; but this schedule does not appear in the evidence. It is apparent, however, from the record, that the obligations referred to were those incurred in the making of the composition, and it appears that these obligations were accordingly assumed by the corporation.

The corporation employed Fleigeltaub as manager, but the business did not prove successful. The creditors' committee sent out a letter

to all of the noteholders under the composition, stating the result of the conduct of the business. They further reported that Adelman had advanced $2,000 to help carry on the business, in addition to the original $4,000, and that, owing to business conditions, and various circumstances set forth, the committee had decided to discontinue the store, to dispose of the merchandise, and, after paying the moneys advanced and such portions of the original waived 10 per cent. cash payment as then remained unpaid, to divide the balance pro rata among the composition creditors of Fleigeltaub. They stated that they would make arrangements for the disposition of the stock, probably at auction, and invited the creditors, if they had a better plan to propose, to suggest it at once, so that the committee might proceed in conformity with the wishes of the creditors.

Thereafter the stock was turned over to Tauber, an auctioneer, who realized thereon about $6,100 net. Adelman had previously been paid about $2,000 upon his advances, and he was paid through Tauber $1,500 more, which the creditors charged in the petition to be a preferential payment. It does not appear from the record what, if any, debts the corporation had, other than those assumed by it and growing out of the Fleigeltaub bankruptcy, amounting approximately to $13,000, and the additional advances by Adelman.

[1] 1. The only real contest in the District Court was as to the petitioners' relation to the respondent, whether they were creditors or beneficiaries under a trust. When the property was turned over to the corporation, it became the absolute owner thereof. It had the legal right to use it as it deemed best for its corporate purposes. No lien thereon was reserved to Fleigeltaub's creditors. Nothing in the nature of a trust was expressly stated in the written documents. The composition claims were assumed as part of the consideration for the property transferred. Neither a trust fund nor a trusteeship was within the contemplation or agreement of the parties. There was merely the common-law assumption of Fleigeltaub's debts, the creation of a legal obligation. Pursuant to the composition arrangement and to its express written assumption of these debts, the corporation subsequently indorsed Fleigeltaub's notes. Clearly petitioners, the noteholders, were creditors, and not mere trust beneficiaries.

2. That defendant was insolvent at the time of the alleged preferential payment was not contested in the District Court; without detailing the evidence, the record conclusively establishes such insolvency and Adelman's knowledge thereof.

[2] 3. Was the payment to Adelman a preference? If Adelman were but an ordinary creditor, having no claim entitled to priority as against other creditors, then concededly the payment operated to give him a preference. Defendant, however, now contends that, at least as against these petitioners and the others who were originally creditors of Fleigeltaub, Adelman was entitled to priority of payment. The basis for such a claim is not clear. If the assumption by the corporation of Fleigeltaub's debts had not been general as to all creditors, but special and conditioned as to some, to pay the other creditors only after Adelman should have been fully paid, or if all

of the other creditors had expressly subordinated their claims to that of Adelman, he might well claim priority, and thus negative the apparent preferential character of the payments. But, while one witness testified that the two creditors who were directors of the corporation had so agreed, the record is silent as to any general agreement by all the creditors granting such priority.

Nor is there anything in the surrounding circumstances to justify the court either in finding that the parties impliedly assented to such an arrangement or in imposing upon them this priority of claim irrespective of their assent. When they entered into the composition agreement, even those creditors who did not waive the 10 per cent. cash were not concerned with the means by which the necessary money was raised. The fund in court was sufficient for their purposes. They, as well as the other creditors, were willing, however, to let Fleigeltaub work out his supposed equity, provided he was placed under corporate control and the balance of their claim was assumed by the corporation. At that time the parties believed that there was a good equity for Fleigeltaub in the fund over and above the claims as settled by the composition and all expenses—an equity valued, though undoubtedly overvalued, at $12,000. It was in reliance upon this belief that Adelman was willing to furnish the necessary advances without making what would doubtless have been a vain attempt to obtain a legal priority by common agreement.

The course of business, moreover, negatives any implied agreement, for with Adelman's knowledge the 10 per cent., the cash payment of which had been waived, as well as a part of all the other notes, was subsequently paid by the corporation, before any payment of Adelman's claim. And because of the consequent depletion of its funds, the corporation borrowed the additional moneys from Adelman, the repayment of which is charged as a preferential payment. No security had been demanded by Adelman; none was given. No priority over other creditors accrued to him because of either the loan itself or the purpose for which it was required. The payments to Adelman were preferential.

The order must be reversed, and the cause remanded, with directions to enter an order of adjudication.